UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

——————

| | | |
|---|---|---|
| HOPE NETWORK REHABILITATION SERVICES, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 5:05-cv-163 |
| v. | ) ) | Honorable Joseph G. Scoville |
| BLUE CROSS BLUE SHIELD OF MICHIGAN, | ) ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |
| KATHLEEN LAVANWAY, | ) ) | |
| Plaintiff, | ) ) | Case No. 5:06-cv-29 |
| v. | ) ) | |
| QBE INSURANCE CORP., et al., | ) ) | **OPINION** |
| Defendants. | ) ) | |
| _____ | ) | |

These consolidated cases involve a dispute between two insurance companies concerning responsibility for coverage of certain medical and rehabilitation expenses incurred by the insured, Kirk Krogel, as a result of a serious motor vehicle accident that occurred on March 25, 2004. QBE Insurance Corporation issued a no-fault insurance policy that covered Mr. Krogel at the time of the accident. At the same time, Mr. Krogel was covered by a health care plan administered by defendant Blue Cross/Blue Shield of Michigan (BCBSM), provided by the Pullman Industries

to Robert Lavanway, Mr. Krogel's father, as an incident of his employment. The disputed medical bills principally involve extensive neuro-rehabilitation and cognitive training provided to Mr. Krogel during the year 2005 by Hope Network Rehabilitation Services. Invoices for the disputed services were presented to both insurers, each of which denied coverage.

These cases originated in the state circuit courts. Hope Network Rehabilitation Services brought suit in the Kent County Circuit Court (case no. 05-10536-NF) seeking to recover $178,337.37 for rehabilitative and other services provided to Mr. Krogel. Later, Mr. Krogel's guardian, Kathleen Lavanway, initiated suit in the Van Buren County Circuit Court (case no. 06-00054-462-NF) to recover for oral surgery to repair facial damage from the motor vehicle accident, neuro-psychological testing to evaluate the extent of Mr. Krogel's head injury, and charges from Van Buren County Community Mental Health. Each state-court action named BCBSM as well as the no-fault carrier. BCBSM removed both cases to this court on the basis of federal question jurisdiction, as the claims against BCBSM arise under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* The parties have stipulated to consolidation of these matters, FED. R. CIV. P. 42(a), and to the dispositive jurisdiction of a magistrate judge, FED. R. CIV. P. 73.

The court's case management order established a briefing schedule for the parties to address the liability of BCBSM in accordance with the procedures established by the Sixth Circuit in *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609 (6th Cir. 1998), pursuant to which the court's review of a claim for benefits under ERISA must be based on the administrative record alone. Other issues involving the liability of QBE under the state no-fault statute are subject to the usual process of discovery, summary judgment practice, and possible jury trial. The time under the case

-2-

management order for submission of briefs by all parties has now expired. BCBSM has submitted

the Administrative Record (AR) (docket # 33), as well as the Summary Plan Description (docket #

63, Ex. A). BCBSM, Hope Network, and Kathleen Lavanway have submitted briefs in support of

their motions to affirm the decision of BCBSM; QBE has chosen not to address the question of the

liability of BCBSM under ERISA for payment of the disputed medical bills. After review of the

submission of the parties and the record, the court concludes that BCBSM has no further liability for

the disputed expenses regarding Hope Network, and that the record is insufficient for review of

certain other claims. Judgment will therefore be entered on behalf of BCBSM, leaving pending only

the no-fault claims against QBE.


### Findings of Fact

Kirk Krogel was involved in a motor vehicle accident on March 25, 2004, in which

he sustained traumatic brain injury, multiple orthopedic and soft tissue injuries, including a lacerated

spleen, and injuries to his jaw and face. He was treated at Bronson Methodist Hospital for ten days,

after which he was transferred home to the care of his family. Approximately nine months later, in

January of 2005, Mr. Krogel was admitted to Hope Network Rehabilitation Services for a

comprehensive program of neuro-rehabilitation. He incurred charges for room and board, speech

therapy, physical and occupational therapy, and vocational and related services. Responsibility for

payment of those services forms a principal issue in this case.

At the time of the accident, Mr. Krogel was covered by two insurance plans. The first

was a policy of no-fault automobile insurance issued pursuant to Michigan law by defendant QBE

Insurance Corporation. (*See* Personal Auto Policy, docket # 65). The no-fault policy contained a

coordination of benefits clause providing that the policy would be excess over any medical, surgical or hospital reimbursement health care plan.  (Policy at 5).  Mr. Krogel was also covered as a dependent under the health benefit plan provided by Pullman Industries to Mr. Krogel's stepfather, as a benefit of his employment.  The Pullman Industries health benefits plan is administered by defendant BCBSM.  The plan is self-funded, and BCBSM is merely the claims administrator.  The plan documents delegate "the responsibility and discretionary authority to process and pay claims to BCBSM as 'claims administrator.'" (Group Enrollment & Coverage Agreement, Part A -- Terms and Conditions, AR 17).  The same provision goes on to state that "BCBSM shall have the power and discretion to construe the terms of this Agreement and to determine all questions pertaining to the administration, interpretation, and application of this Agreement and any Certificates and Riders that involve eligibility for benefits and the payment or denial of clams."  (*Id.*).

Hope Network submitted its bills to both QBE and BCBSM.  Since QBE considered itself secondary under the coordination of benefits clause, it would not pay or process any charges until it received notice that BCBSM had paid or denied a claim.  BCBSM denied coverage for a great deal of the services provided by Hope Network, citing exclusions in the certificate language.  QBE has nevertheless refused to provide coverage, asserting exclusions in its own policy.

Both Hope Network and Kathleen Lavanway, guardian of Kirk Krogel, initiated suit in the state courts for an adjudication of the liability of the insurance companies for the unpaid medical bills.  As the Pullman Industries health benefit plan is concededly subject to ERISA, the decisions of BCBSM as claims administrator are reviewable only under the standards applicable to ERISA cases.

-4-

## Discussion

1.      **Coordination of Benefits Analysis**

The policy of no-fault insurance issued by defendant QBE contained a coordination of benefits clause, under which the insurance company's obligation to pay medical bills was secondary to the obligation of any applicable health benefits plan.  Policies of no-fault insurance issued under Michigan law contain such a provision by reason of section 3109a of the No-Fault Act, which requires no-fault insurers to offer, at an appropriately reduced premium, deductibles and exclusions reasonably related to other health and accident coverage on the insured.  MICH. COMP. LAWS § 500.3109a.  As a result of this statutory requirement, the Michigan courts have developed a priority of coverage rule such that, if a policy of no-fault insurance contains a coordination of benefits clause under section 3109a and an applicable health care policy also contains a coordination of benefits provision, the health insurer will be deemed primary.  This has come to be known as the Federal Kemper rule after *Federal Kemper Insurance Co. v. Health Insurance Admin., Inc.*, 383 N.W.2d 590 (Mich. 1986) (overruled in part by *Auto Club Ins. Ass'n v. Frederick & Herrud, Inc.*, 505 N.W.2d 820 (Mich. 1993)).  Thus, under Michigan law, in most situations involving coordinated health and no-fault coverages, the health coverage will be primary to the auto policy to the extent that services are covered under the health plan.  *See Toussignant v. Allstate Ins. Co.*, 506 N.W.2d 844, 848 (Mich. 1993).

Because the Pullman Industries health plan at issue here is self-funded, principles of ERISA preemption would require that the plan's coordination of benefits clause take precedence over a conflicting cause in the no-fault policy.  *See Lincoln Mut. Cas. Co. v. Lectron Prods. Inc.*, 970 F.2d 206, 209 (6th Cir. 1992); *Auto Club Ins. Assoc. v. Health & Welfare Plans*, 961 F.2d 588, 593

(6th Cir. 1992) ("Self-insured ERISA plans, including self-insured plans containing coordination of benefits clauses, are not reached by 500.3109a.").  Therefore, when a traditional insurance policy and a qualified ERISA plan contain conflicting coordination of benefit clauses, the terms of the ERISA plan, including its coordination of benefit clause, must be given full effect.  *American Med. Sec., Inc. v. Auto Club Ins. Ass'n of Mich.*, 238 F.3d 743, 754 (6th Cir. 2001) (citing *Auto Owners Ins. Co. v. Thornapple Valley*, 31 F.3d 371, 374 (6th Cir. 1994)).  In the present case, however, the ERISA plan does not contain a coordination of benefit clause that would affect no-fault insurance.  Consequently, the health plan must be deemed primary, to the extent that services are covered.  If services are not covered by the ERISA plan, however, they become the responsibility of the no-fault carrier, subject to the terms and conditions of the no-fault policy.  *See Sprague v. Farmers Ins. Exch.*, 650 N.W.2d 374, 379 (Mich. Ct. App. 2002).

### 2.      Review of Claims Administrator's Decisions

Because the Pullman Industries health plan, as administered by defendant BCBSM, has primary responsibility for Mr. Krogel's medical coverage, it is necessary for this court to determine whether the decision of BCBSM to deny certain benefits at issue herein withstands review under ERISA.  A plaintiff's claim for benefits under a health plan is governed by section 502(a)(1)(B) of ERISA, which empowers a participant or beneficiary to sue to recover benefits due under the terms of his plan.  29 U.S.C. § 1132(a)(1)(B).  A plan administrator's denial of benefits under an ERISA plan is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  The Sixth Circuit has

consistently required that a plan contain a clear grant of discretion to the administrator to determine benefits or interpret the plan. *See Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998) (*en banc*). In the present case, paragraph 9 of the Group Enrollment and Coverage Agreement clearly invests BCBSM, as claims administrator, "the power and discretion to construe the terms of this Agreement and to determine all questions pertaining to the administration, interpretation, and application of this Agreement and any Certificates and Riders that involve eligibility for benefits and the payment or denial of claims." (AR 17). Such a clear delegation in the language of the plan to a fiduciary other than the plan administrator is a proper delegation under ERISA and is sufficient to justify application of the deferential "arbitrary and capricious" standard. *See Lee v. MBNA Long Term Disability & Benefit Plan*, 136 F. App'x 734, 742 (6th Cir. 2005).[1]

Under the arbitrary and capricious standard, the court must affirm a benefit determination if it is rational in light of the provisions of the ERISA plan. *See Smith v. Continental Cas. Co.*, 450 F.3d 253, 258 (6th Cir. 2006). With regard to the principal claim involved in the present case -- the extensive rehabilitation services provided by Hope Network -- the decision of BCBSM is easily sustainable under this standard. All parties who have briefed the issue agree that the charges denied by BCBSM were clearly not covered under the language of the plan or certificate. The plan excludes payment for inpatient admissions that are primarily for physical, speech, or occupational therapy. (AR 55). It is also clear that Hope Network is not a participating provider,

---

[1] Even when applying the deferential arbitrary and capricious standard, the court must take into account any conflict of interest arising from the fact that the decision maker is also responsible for the payment of benefits. *See Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 292 (6th Cir. 2005). No such potential for self-interested decision-making is present in this case, however, because BCBSM merely acts as the claims administrator for a self-funded plan and has no liability for the payment of benefits.

and that the plan does not pay for services at non-participating outpatient physical therapy or outpatient mental health facilities. Although BCBSM did cover certain charges submitted by Hope Network, no party has advanced any reason to conclude that any of the rejected charges should have been paid. After its own independent review of the plan provisions cited by the parties, the court likewise concludes that the decision of BCBSM to deny coverage for the disputed items was reasonable and passes scrutiny under the arbitrary and capricious standard.

Plaintiff Kathleen Lavanway has sought review of three further items allegedly denied by BCBSM: a bill for dental services performed by Verne Ticknor, D.D.S., in January of 2006; charges for a bone stimulator prescribed on July 13, 2004; and mental health services rendered by Van Buren Community Mental Health in 2006. At the hearing conducted in this matter, the court determined that the record was insufficient for judicial review, either because these items had not been submitted to the claims administrator or because the reasons for denial of the claims had not been documented of record. All parties agreed to the remand to the claims administrator of each of these claims for reconsideration, without prejudice to the rights of either plaintiff or BCBSM under the plan documents.

## Conclusion

This court's review of the decisions of BCBSM in denying coverage for certain services rendered by Hope Network to Kirk Krogel demonstrates no error by the claims administrator. Judgment will therefore be entered in favor of BCBSM in *Hope Network Rehabilitation Services v. Blue Cross Blue Shield of Michigan*, case no. 5:05-cv-163. With regard to the claims raised by Mr. Krogel's guardian in *Lavanway v. Blue Cross Blue Shield of Michigan*,

the court, with the consent of the parties, will remand those claims to the claims administrator for

further review.  At any time during the pendency of this case, the guardian may move for further

review of such claims, after exhaustion of administrative remedies.  The claims against defendant

QBE Insurance Company under its no-fault policy remain pending.


Dated:   December 19, 2006                    /s/  Joseph G. Scoville_____
                                              United States Magistrate Judge